Attorney No. 32035

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CIARA JACKSON, | ) | |
| Plaintiff, | ) | JURY DEMANDED |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| JACKSON PARK HOSPITAL | ) | Judge: |
| Defendant. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

NOW COMES Plaintiff Ciara Jackson ("Jackson"), by and through her undersigned attorneys, and for her Complaint at Law against Defendant, JACKSON PARK HOSPITAL, ("Defendant" or "JACKSON PARK HOSPITAL") as follows:

### Nature of the Case

1. Counts I, II, and III are brought against Jackson Park Hospital under the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq. ("the IHRA" or "the Act") and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et. seq. ("Title VII").

### Jurisdiction and Venue

2. This Court has jurisdiction over this matter pursuant to Title VII, 775 ILCS 7A-102(F) of the IHRA, and 28 U.S.C. §1367.

3. Plaintiff has filed a charge of sex discrimination, sexual harassment, and retaliation against Defendant Jackson Park Hospital with the Illinois Department of Human Rights ("IDHR") and Equal Employer Opportunity Commission. IDHR Charge No. 2024CF0014 (EEOC Charge No. 21B-2023-01035) is attached and incorporated herein as Exhibit 1.

4. The requisite IDHR Approved Opt-Out Notice corresponding to Charge No. 2024CF0014 is attached and incorporated herein as Exhibit 2.

5. The requisite EEOC Notice of Right to Sue corresponding to Charge No. 21B-2023-01035 is attached and incorporated herein as Exhibit 3.

6. Venue is proper in the Northern District of Illinois, Eastern Division. The claims for relief arose in Cook County, Illinois.

**<u>Parties</u>**

7. Jackson is a black female and a resident of Illinois.

8. Defendant is duly registered to conduct business in the state of Illinois, having substantial business operations at 7531 S. Stony Island Ave., Chicago, Illinois, 60649.

9. At all times relevant herein, Defendant has engaged in an industry affecting Commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks.

10. Defendant maintains operations in Cook County, Illinois.

11. At all times relevant herein, Jackson was employed by Defendant.

12. At all relevant times herein, Plaintiff was employed by Defendant as an employee for the purposes of Title VII.

13. At all relevant times herein, Defendant was an "employer" within the meaning of 775 ILCS 5/2-101(B), and as such, was subject to the provisions of the IHRA.

14. At all relevant times herein, Plaintiff was an "employee" of Defendant within the meaning of 775 ILCS 5/2-101(A), and as such, was subject to the provisions of the IHRA.

15. At all times relevant herein, Jackson was supervised by Andre Reed ("Reed"), male IT manager.

16. At all times relevant herein, Jackson was supervised by direct manager, Barry Mendall ("Mendall").

**General Allegations**

17. On or around November 2022, Defendant hired Jackson as a Network Administrator.

18. Throughout her employment with Defendant, Jackson performed her duties in a satisfactory manner consistent with Defendant's legitimate standards.

19. Throughout her employment, Jackson's job responsibilities included resolving technical issues in Defendant's network and conducting cyber security tests.

20. Throughout her employment, Jackson was the youngest female employees of Defendant who worked in her department.

21. Throughout her employment, Jackson never received full and proper job training from Reed or any other member of the IT staff at the start of her employment.

**Count I- Sex Discrimination**

22. Jackson incorporates all preceding and subsequent paragraphs by reference herein.

23. Count I is brought pursuant to Title VII and the IHRA

24. During her employment with Defendant, Jackson performed her assigned tasks in a satisfactory manner in accordance with Defendant's standards.

25. Jackson was subjected to persistent sex discrimination by Defendant supervisors and employees.

26. During Jackson's initial interview, Reed "joked" in Jackson's job interview and during her first day working for Defendant that Jackson would "one day take over his job".

27. These comments were hostile targeted at Jackson because of her gender.

28. On or about November 18, 2022, three days into her employment with Defendant, a full network crash and system failure occurred.

29. Immediately prior to this incident, Jackson and three of her coworkers witnessed Reed unplugging various wires and equipment.

30. Subsequent to witnessing Reed unplugging various wires and equipment, Reed approached Jackson and asked her to fix the network issues.

31. Due to the aforementioned inadequate training from Defendant, Jackson was not trained on how to fix network issues.

32. During the aforementioned network issues, Reed offered Jackson no assistance.

33. During the aforementioned network issues, Reed did not respond to questions from Jackson about resolving the system failure.

34. During the aforementioned network issues, Reed informed Jackson the aforementioned network issues were not her fault and tech support informed Jackson that these issues were ongoing.

35. Subsequently, Jackson was written-up by Reed when she did not solve aforementioned network issues.

36. On December 8, 2022, Jackson contacted direct manager Mendall to report Reed's conduct toward her.

37. In response, Mendall told Jackson to talk to Reed about resolving these issues.

38. Throughout the course of Jackson's employment with Defendant, Reed and other male coworkers made numerous sexually explicit and derogatory comments toward her.

39. On one occasion, Reed made a comment in front of multiple coworkers about Jackson eating pineapple and how she "must taste good," an offensive sexual innuendo.

40. On another occasion, Reed stated "we gotta get Ciara out of here" in reference to the fact that Jackson lives in Indiana, alluding to the politics of Indiana and Jackson's gender.

41. On another occasion, Reed told one of Jackson's coworkers, Renee Taylor ("Taylor"), that he was trying to get her fired.

42. Jackson was written up for multiple dress code violations by Reed on account of her attire, which was often a hoodie and leggings.

43. Similarly situated employees wearing comparable clothing to Jackson's and did not receive a dress code violation.

44. The aforementioned dress code violations were disproportionate discipline and an attempt by Reed to further isolate and sexualize Jackson, as it related to her personal figure and not her clothing choices.

45. Throughout Jackson's employment, she received regular disciplinary actions for dress code violations.

46. In the afternoon on April 6, 2023, Reed gave Jackson a write-up for a dress code violation and sent her home from work.

47. Similarly situated employee, Jackson's male coworker Tyrese LNU, failed his drug test, was routinely late, slept on the job, smelled of marijuana, and had disheveled clothing that violated Defendant's dress code and received no disciplinary action from Defendant.

48. Similarly situated employees did not receive discipline for comparable behavior or readily apparent violations of Defendant's policies.

49. On another occasion around March 27, 2023, Reed informed Jackson that her schedule was changing and her shift would begin at 8:30 A.M. instead of 8:00 A.M.

50. After the aforementioned conversation, on or about March 31, 2023, Reed went to Human Resources and changed Jackson's starting time back to 8:00 A.M. without informing her.

51. After Reed changed Jackson's time with Human Resources, Jackson reported for her shift on April 3rd, 2023, around at 8:30 A.M. and received a write-up from Reed for being late to work.

52. The aforementioned comments, actions, and disciplines against Jackson altered the terms and conditions of her employment and created an abusive working environment.

53. On April 7, 2023, Jackson complained to Defendant Human Resources Representative Eboni LNU about the aforementioned schedule change, targeted discrimination, and harassment Jackson had been subjected to.

54. During the aforementioned conversation with Eboni, Jackson told her that the dress code write-ups made her feel sexualized.

55. The aforementioned conversation ended abruptly due to Reed's entry into the room.

56. On April 10, 2023, Jackson contacted Human Resources and met with Eboni to complain again about the discrimination and harassment interfering with Jackson's ability to complete her job responsibilities and creating a sexually hostile work environment.

57. In response to Jackson's complaints, Defendant took no further action to follow-up on any of her complaints.

58. On April 17, 2023, Jackson was called in to Defendant's Human Resources office where she saw Reed, two Defendant Human Resources staff members, and multiple security guards.

59. Subsequent to being called into Defendant's Human Resources office, Jackson was informed of her termination and forcibly escorted off the premises.

60. No reason and no notice was provided for Jackson's termination.

61. Jackson never received an evaluation for any job performance issues.

62. Jackson was disciplined and terminated by Defendant as acts of discriminated based on her sex in violation of Title VII of the Civil Rights Act of 1964 and the Illinois Human Rights Act.

63. Defendant aided and abetted discrimination by failing to properly supervise, investigate and take appropriate remedial measures to otherwise prevent harm to Plaintiff.

64. As a further direct and proximate result of said unlawful employment practices, Jackson has suffered depression, extreme mental anguish, outrage, severe anxiety, shameful embarrassment among her friends, colleagues, and coworkers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasure of life.

**<u>Prayer for Relief</u>**

WHEREFORE, Plaintiff Ciara Jackson respectfully requests this Honorable Court to provide the following equitable and legal remedies:

a.) Advance the case on the docket, order a speedy hearing at the earliest practicable date, and cause this case to be expedited in every possible way;

b.) Order a permanent injunction prohibiting Defendant from further acts of sex discrimination;

c.) Award Jackson all costs of litigation, including reasonable attorneys' fees and expert fees and expenses;

d.) Award Jackson a judgment against Defendant for lost employment benefits, reinstatement, frontpay, backpay, other compensatory damages, and punitive damages;

e.) Award Jackson pre-judgment interest;

f.) Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination from Defendant's workplace;

g.) Grant such other and further relief as this Honorable Court deems just and proper.

### Count II-Sexual Harassment

65. Jackson incorporates all preceding and subsequent paragraphs by reference herein.

66. Count II is brought pursuant to Title VII and the IHRA.

67. During her employment with Defendant, Jackson performed her assigned tasks in a satisfactory manner in accordance with Defendant's standards.

68. Jackson experienced severe and pervasive sexual harassment from Defendant supervisors.

69. On or about November 18, 2022, three days into her employment with Defendant, a full network crash and system failure occurred.

70. Immediately prior to this incident, Jackson and three of her coworkers witnessed Reed unplugging various wires and equipment.

71. Subsequent to witnessing Reed unplugging various wires and equipment, Reed approached Jackson and asked her to fix the network issues.

72. Due to the aforementioned inadequate training from Defendant, Jackson was not trained on how to fix network issues.

73. During the aforementioned network issues, Reed offered Jackson no assistance.

74. During the aforementioned network issues, Reed did not respond to questions from Jackson about resolving the system failure.

75. During the aforementioned network issues, Reed informed Jackson the aforementioned network issues were not her fault and tech support informed Jackson that these issues were ongoing.

76. Subsequently, Jackson was written-up by Reed when she did not solve aforementioned network issues.

77. On December 8, 2022, Jackson contacted direct manager Mendall to report Reed's conduct toward her.

78. In response, Mendall told Jackson to talk to Reed about resolving these issues.

79. Throughout the course of Jackson's employment with Defendant, Reed and other male coworkers made numerous sexually explicit and derogatory comments toward her.

80. On one occasion, Reed made a comment in front of multiple coworkers about Jackson eating pineapple and how she "must taste good," an offensive sexual innuendo.

81. On another occasion, Reed stated "we gotta get Ciara out of here" in reference to the fact that Jackson lived in Indiana, alluding to the politics of Indiana and Jackson's gender.

82. On another occasion, Reed told one of Jackson's coworkers, Renee Taylor ("Renee"), that he was trying to get her fired.

83. Jackson was written up for multiple dress code violations by Reed on account of her attire, which was often a hoodie and leggings.

84. Similarly situated employees wearing comparable clothing to Jackson's and did not receive a dress code violation.

85. The aforementioned dress code violations were disproportionate discipline and an attempt by Reed to further isolate and sexualize Jackson, as it related to her personal figure and not her clothing choices.

86. Throughout Jackson's employment, she received regular disciplinary actions for dress code violations.

87. In the afternoon on April 6, 2023, Reed gave Jackson a write-up for a dress code violation and sent her home from work.

88. Similarly situated employee, Jackson's male coworker Tyrese LNU, failed his drug test, was routinely late, slept on the job, smelled of marijuana, and had disheveled clothing that violated Defendant's dress code and received no disciplinary action from Defendant.

89. Similarly situated employees did not receive discipline for comparable behavior or readily apparent violations of Defendant's policies.

90. On another occasion around February 17, 2023, Reed informed Jackson that her schedule was changing and her shift would begin at 8:30 A.M. instead of 8:00 A.M.

91. After the aforementioned conversation, on or about March 31, 2023, Reed went to Human Resources and changed Jackson's starting time back to 8:00 A.M. without informing her.

92. After Reed changed Jackson's time with Human Resources, Jackson reported for her shift on April 3rd, 2023, around at 8:30 A.M. and received a write-up from Reed for being late to work.

93. The aforementioned comments, actions, and disciplines against Jackson altered the terms and conditions of her employment and created an abusive working environment.

94. On April 7, 2023, Jackson complained to Defendant Human Resources Representative Eboni LNU about the aforementioned schedule change, targeted discrimination, and harassment Jackson had been subjected to.

95. During the aforementioned conversation with Eboni, Jackson told her that the dress code write-ups made her feel sexualized.

96. The aforementioned conversation ended abruptly due to Reed's entry into the room.

97. On April 10, 2023, Jackson contacted Human Resources and met with Eboni to complain again about the discrimination and harassment interfering with Jackson's ability to complete her job responsibilities and creating a sexually hostile work environment.

98. In response to Jackson's complaints, Defendant took no further action to follow-up on any of her complaints.

99. On April 17, 2023, Jackson was called in to Defendant's Human Resources office where she saw Reed, two Defendant Human Resources staff members, and multiple security guards.

100. Subsequent to being called into Defendant's Human Resources office, Jackson was informed of her termination and forcibly escorted off the premises.

100. Defendant aided and abetted harassment by failing to properly supervise, investigate and take appropriate remedial measures to otherwise prevent harm to Plaintiff.

101. As a further direct and proximate result of said unlawful employment practices, Jackson has suffered depression, extreme mental anguish, outrage, severe anxiety, shameful embarrassment among her friends, colleagues, and coworkers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasure of life.

**<u>Prayer for Relief</u>**

WHEREFORE, Plaintiff Ciara Jackson respectfully requests this Honorable Court to provide the following equitable and legal remedies:

a) Advance the case on the docket, order a speedy hearing at the earliest practicable date, and cause this case to be expedited in every possible way;

b) Order a permanent injunction prohibiting Defendant from further acts of sex discrimination;

c) Award Jackson all costs of litigation, including reasonable attorneys' fees and expert fees and expenses;

d) Award Jackson a judgment against Defendant for lost employment benefits, reinstatement, frontpay, backpay, other compensatory damages, and punitive damages;

e) Award Jackson pre-judgment interest;

f) Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination from Defendant's workplace;

g) Grant such other and further relief as this Honorable Court deems just and proper.

**<u>Count III-Retaliation</u>**

102. Jackson incorporates all preceding and subsequent paragraphs by reference herein

103. Count III is being brought pursuant to Title VII and the IHRA.

104. During her employment with Defendant, Jackson performed her assigned tasks in a satisfactory manner in accordance with Defendant's standards.

105. Throughout Jackson's employment, she was subjected to sex discrimination and sexual harassment by and through Defendant and its agents.

106. On April 7, 2023, Jackson complained to Defendant Human Resources Representative Eboni LNU about targeted discrimination and harassment Jackson had been subjected to.

107. During the aforementioned conversation with Eboni, Jackson told her that the dress code write-ups made her feel sexualized.

108. The aforementioned conversation ended abruptly due to Reed's entry into the room.

109. On April 10, 2023, Jackson contacted Human Resources and met with Eboni to complain again about the discrimination and harassment interfering with Jackson's ability to complete her job responsibilities and creating a sexually hostile work environment.

110. In response to Jackson's complaints, Defendant took no further action to follow-up on any of her complaints.

111. On April 17, 2023, Jackson was called in to Defendant's Human Resources office where she saw Reed, two Defendant Human Resources staff members, and multiple security guards.

112. Subsequent to being called into Defendant's Human Resources office, Jackson was informed of her termination and forcibly escorted off the premises.

113. Defendant fired Jackson in retaliation for her complaints about discrimination and harassment.

114. Defendant aided and abetted harassment by failing to properly supervise, investigate and take appropriate remedial measures to otherwise prevent harm to Plaintiff.

115. Jackson's complaints to Defendant's Human Resources department about sexual discrimination and harassment qualify as a protected activities.

116. Jackson's complaints to Defendant's Human Resources department and her termination occurred in a short enough time frame to raise an inference of retaliatory motive.

117. Defendant retaliated against Jackson in violation of Title VII of the Civil Rights Act of 1964 and the Illinois Human Rights Act.

118. As a further direct and proximate result of said unlawful employment practices, Jackson has suffered depression, extreme mental anguish, outrage, severe anxiety, shameful embarrassment among her friends, colleagues, and coworkers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasure of life.

## **Prayer for Relief**

WHEREFORE, Plaintiff Ciara Jackson respectfully requests this Honorable Court to provide the following equitable and legal remedies:

h.) Advance the case on the docket, order a speedy hearing at the earliest practicable date, and cause this case to be expedited in every possible way;

i.) Order a permanent injunction prohibiting Defendant from further acts of sex discrimination;

j.) Award Jackson all costs of litigation, including reasonable attorneys' fees and expert fees and expenses;

k.) Award Jackson a judgment against Defendant for lost employment benefits, reinstatement, frontpay, backpay, other compensatory damages, and punitive damages;

l.) Award Jackson pre-judgment interest;

m.) Enter an order requiring Defendant to implement effective steps to eliminate sex discrimination from Defendant's workplace;

n.) Grant such other and further relief as this Honorable Court deems just and proper.

Ciara Jackson

/s/ Uche Asonye_____
One of Plaintiff's Attorneys

Uche O. Asonye – 6209522
Asonye & Associates
100 North LaSalle, Suite 2115
Chicago, Illinois 60602
(312) 795-9110
uasonye@aa-law.com

**JURY DEMAND**

NOW COMES the Plaintiff Ciara Jackson, by and through her undersigned attorneys, and

hereby demand a trial by jury in the above-entitled causes of action.

Respectfully Submitted,
Ciara Jackson

/s/ Uche Asonye_____
One of Plaintiff's Attorneys

Uche O. Asonye – 6209522
Asonye & Associates
100 North LaSalle, Suite 2115
Chicago, Illinois 60602
(312) 795-9110
uasonye@aa-law.com

# EXHIBIT 1

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form.<br><br># | AGENCY<br>☒ IDHR<br><br>☐ EEOC | CHARGE NUMBER |
|---|---|---|

### Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (indicate Mr. Ms. Mrs.)<br>## Ciara Jackson | TELEPHONE NUMBER (include area code)<br>## (219)-487-6641 | |
|---|---|---|
| STREET ADDRESS     CITY, STATE AND ZIP CODE<br>## 6614 Spinnaker Ct., Apt. 202, Portage, IN 46368 | DATE OF BIRTH<br>04/18/1991<br>MM / DD / YYYY | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT<br>## Jackson Park Hospital | NUMBER OF EMPLOYEES, MEMBERS 15+ 837+ | TELEPHONE NUMBER (include area code)<br>## (773)-947-7500 |
|---|---|---|
| STREET ADDRESS     CITY, STATE AND ZIP CODE<br>## 7531 S. Stony Island Ave., Chicago, IL 60649 | | COUNTY<br>## Cook |

| CAUSE OF DISCRIMINATION BASED ON:<br><br>**Sex Discrimination, Sexual Harassment, Retaliation** | DATE OF DISCRIMINATION<br>EARLIEST (ADEA/EPA)   LATEST (ALL)<br>11/18/22       4/17/23<br>■ CONTINUING ACTION |
|---|---|

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

### S E E   A T T A C H E D

**Page 1 of 2**

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that the undersigned verily believes the same to be true. [735 ILCS 5/1-109]<br><br>X _____     7-25-2023<br>SIGNATURE OF COMPLAINANT     DATE |
|---|---|

EEO-5 FORM (Rev. 4/2022-INT)                          **RETURN THIS COPY**

CIARA JACKSON V. JACKSON PARK HOSPITAL
PAGE 2 OF CHARGE

I.    A.    ISSUE/BASIS

1. Sex Discrimination/Termination – I was discriminated against and terminated by Respondent on the basis of my sex.

B.    PRIMA FACIE ALLEGATIONS

1. I am a 32-year-old woman.

2. On or about November 2022, I began working as a Network Administrator for Respondent, the only employee of Respondent with this job title.

3. My job responsibilities included resolving technical issues in Respondent's network and conducting cyber security tests.

4. During my employment with Respondent, my job performance met Respondent's legitimate expectations.

5. I was directly supervised by Andre Reed ("Reed"), a male IT Manager for Respondent.

6. I was the youngest female employee of Respondent who worked in my department.

7. I never received full and proper job training from Reed or any other member of the IT staff at the start of my employment.

8. On or about November 18, 2022, three days into my employment with Respondent, a full network crash and system failure occurred.

9. Immediately prior to this incident, I and three of my coworkers witnessed Reed unplugging various wires and equipment.

10. Reed approached me and asked me to fix the network issues.

Initials C. J    Date 7-25-2023

CIARA JACKSON V. JACKSON PARK HOSPITAL
PAGE 3   OF CHARGE

11. Because it was my third day on the job and I had not received proper training, I was unable to fix the network issues. Reed offered no assistance and did not respond to my questions about resolving the system failure or the unplugged wires.

12. On December 8, 2022, I contacted Reed's direct manager at Respondent, Barry Mendall ("Mendall"), to report Reed's conduct toward me. Mendall told me to talk to Reed about resolving these issues.

13. In the course of my employment with Respondent, Reed and other male coworkers made numerous sexually explicit and derogatory comments toward me.

14. On one occasion, Reed made a comment in front of multiple coworkers about me eating pineapple and how I "must taste good," an offensive sexual innuendo.

15. On another occasion, Reed stated that "we gotta get Ciara out of here" in reference to the fact that I lived in Indiana. I viewed this as a reference to the politics of Indiana and a thinly veiled allusion to my gender.

16. Reed "joked" in my initial job interview and during my first day working for Respondent that I would one day take over his job. I felt that these comments were targeted at me because of my gender, and they seemed more hostile than jokes.

17. Reed told one of my coworkers, Renee Taylor ("Renee"), that he was trying to get me fired.

18. I was written up for multiple dress code violations by Reed on account of my attire, which was often a hoodie and leggings. My clothing was comparable to, if not more presentable than that of my coworkers, who never received a dress code violation.

Initials _C.J_____ Date _7-25-2023_

CIARA JACKSON V. JACKSON PARK HOSPITAL
PAGE 4 OF CHARGE

19. I believe that these write-ups for dress code violations were an attempt by Reed to further sexualize me, as it related to my personal figure and not my clothing choices.

20. In combination, I viewed these repeated remarks and disproportionate discipline as an attempt by Reed to isolate me and target me with sexually discriminatory conduct.

21. These sexually discriminatory comments and actions against me altered the terms and conditions of my employment and created an abusive working environment.

22. Similarly situated employees did not receive discipline for comparable behavior or readily apparent violations of Respondent's policies.

23. For instance, one of my male coworkers named Tyrese ("Tyrese," last name unknown) failed his drug test, was routinely late, slept on the job, smelled of marijuana, and had disheveled clothing that violated Respondent's dress code. This coworker was never written up and received no disciplinary action from Respondent.

24. On or about February 17, 2023, Reed informed me that my schedule was changing and that I would be starting my shift at 8:30 A.M. instead of 8:00 A.M. from now on.

25. On or about March 31, Reed went to Human Resources and changed my starting time back to 8:00 A.M. without informing me.

26. On April 3, when I next reported for my shift, I arrived at 8:30 A.M. as previously instructed. I received a write-up from Reed for showing up late to work, even though he had changed my scheduled start time back to 8:00 A.M. without informing me.

27. In the afternoon on April 6, Reed once again wrote me up for a dress code violation, and he sent me home from work following the write-up.

Initials _C-J_ Date _7-25-2023_

CIARA JACKSON V. JACKSON PARK HOSPITAL
PAGE 5 OF CHARGE

28. On April 7, I went to our Human Resources Representative Eboni ("Eboni," last name unknown) and made a complaint about this schedule change, the repeated and targeted discipline I had been subjected to, and the sexual discrimination that Reed was perpetrating against me. I told her that the dress code write-ups made me feel sexualized, but I refrained from discussing further instances of harassment because Reed had entered the room.

29. On April 10, I again contacted Human Resources and met with Eboni. I informed her that Reed was interfering with my ability to complete my job responsibilities and subjecting me to a sexually hostile work environment.

30. Respondent's Human Resources department took no further action to follow up on any of my complaints.

31. On April 14, Respondent's network shut down, and I had trouble fixing the issue. I contacted a coworker who had the ability to assist me and address this network problem, but they did not respond. Reed never told me anything about how to address this issue.

32. Tech support informed me that this was an ongoing issue and Reed admitted that the continuing network shutdown was not my fault. However, Reed still wrote me up for not fixing the network issue.

33. On April 17, I was called in to Respondent's Human Resources office. Reed, two Human Resources staff members, and multiple security guards were present. I was informed of my termination and forcibly escorted off the premises. No reason was provided for my termination, and I received no prior job performance warning.

Initials _C.J_ Date _7-25-2023_

CIARA JACKSON V. JACKSON PARK HOSPITAL
PAGE 6 OF CHARGE

34. I believe that I was discriminated against by Respondent on the basis of my sex in violation of Title VII of the Civil Rights Act of 1964 and the Illinois Human Rights Act.

35. Respondent sexually discriminated against me by subjecting me to continuous differential treatment, derogatory behavior and conduct, and eventually terminating my employment.

36. Respondent aided and abetted discrimination by failing to properly supervise, investigate and take appropriate remedial measures to otherwise prevent harm to me.

_____          7-25-2023
Complainant's Signature                         Date


II.     ISSUE/BASIS

1. Sexual Harassment/Termination – I was subjected to sexual harassment by Respondent which created a hostile work environment and led to my eventual termination.

B.     PRIMA FACIE ALLEGATIONS

1. I am a 32-year-old woman.

2. On or about November 2022, I began working as a Network Administrator for Respondent, the only employee of Respondent with this job title.


Initials CJ     Date 7-25-2023

CIARA JACKSON V. JACKSON PARK HOSPITAL
PAGE 7 OF CHARGE

3. My job responsibilities included resolving technical issues in Respondent's network and conducting cyber security tests.

4. During my employment with Respondent, my job performance met Respondent's legitimate expectations.

5. I was directly supervised by Andre Reed ("Reed"), a male IT Manager for Respondent.

6. I was the youngest female employee of Respondent who worked in my department.

7. I never received full and proper job training from Reed or any other member of the IT staff at the start of my employment.

8. On or about November 18, 2022, three days into my employment with Respondent, a full network crash and system failure occurred.

9. Immediately prior to this incident, I and three of my coworkers witnessed Reed unplugging various wires and equipment.

10. Reed approached me and asked me to fix the network issues.

11. Because it was my third day on the job and I had not received proper training, I was unable to fix the network issues. Reed offered no assistance and did not respond to my questions about resolving the system failure or the unplugged wires.

12. On December 8, 2022, I contacted Reed's direct manager at Respondent, Barry Mendall ("Mendall"), to report Reed's conduct toward me. Mendall told me to talk to Reed about resolving these issues.

13. In the course of my employment with Respondent, Reed and other male coworkers made numerous sexually explicit and derogatory comments toward me.

Initials C.J      Date 7-25-2023

CIARA JACKSON V. JACKSON PARK HOSPITAL
PAGE 8  OF CHARGE

14. On one occasion, Reed made a comment in front of multiple coworkers about me eating pineapple and how I "must taste good," an offensive sexual innuendo.

15. On another occasion, Reed stated that "we gotta get Ciara out of here" in reference to the fact that I lived in Indiana. I viewed this as a reference to the politics of Indiana and a thinly veiled allusion to my gender.

16. Reed "joked" in my initial job interview and during my first day working for Respondent that I would one day take over his job. I felt that these comments were targeted at me because of my gender, and they seemed more hostile than jokes.

17. Reed told one of my coworkers, Renee Taylor ("Renee"), that he was trying to get me fired.

18. I was written up for multiple dress code violations by Reed on account of my attire, which was often a hoodie and leggings. My clothing was comparable to, if not more presentable than that of my coworkers, who never received a dress code violation.

19. I believe that these write-ups for dress code violations were an attempt by Reed to further sexualize me, as it related to my personal figure and not my clothing choices.

20. In combination, I viewed these repeated remarks and disproportionate discipline as an attempt by Reed to isolate me and target me with sexually discriminatory conduct.

21. These sexually discriminatory comments and actions against me altered the terms and conditions of my employment and created an abusive working environment.

22. Similarly situated employees did not receive discipline for comparable behavior or readily apparent violations of Respondent's policies.

Initials C.J     Date 7-25-2023

CIARA JACKSON V. JACKSON PARK HOSPITAL
PAGE 9 OF CHARGE

23. For instance, one of my male coworkers named Tyrese ("Tyrese," last name unknown) failed his drug test, was routinely late, slept on the job, smelled of marijuana, and had disheveled clothing that violated Respondent's dress code. This coworker was never written up and received no disciplinary action from Respondent.

24. On or about February 17, 2023, Reed informed me that my schedule was changing and that I would be starting my shift at 8:30 A.M. instead of 8:00 A.M. from now on.

25. On or about March 31, Reed went to Human Resources and changed my starting time back to 8:00 A.M. without informing me.

26. On April 3, when I next reported for my shift, I arrived at 8:30 A.M. as previously instructed. I received a write-up from Reed for showing up late to work, even though he had changed my scheduled start time back to 8:00 A.M. without informing me.

27. In the afternoon on April 6, Reed once again wrote me up for a dress code violation, and he sent me home from work following the write-up.

28. On April 7, I went to our Human Resources Representative Eboni ("Eboni," last name unknown) and made a complaint about this schedule change, the repeated and targeted discipline I had been subjected to, and the sexual discrimination that Reed was perpetrating against me. I told her that the dress code write-ups made me feel sexualized, but I refrained from discussing further instances of harassment because Reed had entered the room.

29. On April 10, I again contacted Human Resources and met with Eboni. I informed her that Reed was interfering with my ability to complete my job responsibilities and subjecting me to a sexually hostile work environment.

Initials _C·J_ Date _7-25-2023_

CIARA JACKSON V. JACKSON PARK HOSPITAL
PAGE 10 OF CHARGE

30. Respondent's Human Resources department took no further action to follow up on any of my complaints.

31. On April 14, Respondent's network shut down, and I had trouble fixing the issue. I contacted a coworker who had the ability to assist me and address this network problem, but they did not respond. Reed never told me anything about how to address this issue.

32. Tech support informed me that this was an ongoing issue and Reed admitted that the continuing network shutdown was not my fault. However, Reed still wrote me up for not fixing the network issue.

33. On April 17, I was called in to Respondent's Human Resources office. Reed, two Human Resources staff members, and multiple security guards were present. I was informed of my termination and forcibly escorted off the premises. No reason was provided for my termination, and I received no prior job performance warning.

34. I believe that Respondent discriminated against me by creating a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and the Illinois Human Rights Act.

35. Respondent altered the terms and conditions of my employment and created an abusive working environment that interfered with my ability to complete my job responsibilities.

36. Respondent aided and abetted discrimination by failing to properly supervise, investigate and take appropriate remedial measures to otherwise prevent harm to me.

Initials __C·J__ Date __7-25-2023__

CIARA JACKSON V. JACKSON PARK HOSPITAL
PAGE 11 OF CHARGE

_____
Complainant's Signature

_____
Date    7-25-2023

III.    A.    ISSUE/BASIS

1.  Retaliation/Termination – I was terminated by Respondent for reporting sexual discrimination and harassment to Respondent's Human Resources department.

B.    PRIMA FACIE ALLEGATIONS

1.  I am a 32-year-old woman.

2.  On or about November 2022, I began working as a Network Administrator for Respondent, the only employee of Respondent with this job title.

3.  My job responsibilities included resolving technical issues in Respondent's network and conducting cyber security tests.

4.  During my employment with Respondent, my job performance met Respondent's legitimate expectations.

5.  I was directly supervised by Andre Reed ("Reed"), a male IT Manager for Respondent.

6.  I was the youngest female employee of Respondent who worked in my department.

7.  I never received full and proper job training from Reed or any other member of the IT staff at the start of my employment.

8.  On or about November 18, 2022, three days into my employment with Respondent, a full network crash and system failure occurred.

Initials C.J    Date 7-25-2023

CIARA JACKSON V. JACKSON PARK HOSPITAL
PAGE 12 OF CHARGE

9. Immediately prior to this incident, I and three of my coworkers witnessed Reed unplugging various wires and equipment.

10. Reed approached me and asked me to fix the network issues.

11. Because it was my third day on the job and I had not received proper training, I was unable to fix the network issues. Reed offered no assistance and did not respond to my questions about resolving the system failure or the unplugged wires.

12. On December 8, 2022, I contacted Reed's direct manager at Respondent, Barry Mendall ("Mendall"), to report Reed's conduct toward me. Mendall told me to talk to Reed about resolving these issues.

13. In the course of my employment with Respondent, Reed and other male coworkers made numerous sexually explicit and derogatory comments toward me.

14. On one occasion, Reed made a comment in front of multiple coworkers about me eating pineapple and how I "must taste good," an offensive sexual innuendo.

15. On another occasion, Reed stated that "we gotta get Ciara out of here" in reference to the fact that I lived in Indiana. I viewed this as a reference to the politics of Indiana and a thinly veiled allusion to my gender.

16. Reed "joked" in my initial job interview and during my first day working for Respondent that I would one day take over his job. I felt that these comments were targeted at me because of my gender, and they seemed more hostile than jokes.

17. Reed told one of my coworkers, Renee Taylor ("Renee"), that he was trying to get me fired.

Initials _CJ_ Date _7-25-2023_

CIARA JACKSON V. JACKSON PARK HOSPITAL
PAGE 13 OF CHARGE

18. I was written up for multiple dress code violations by Reed on account of my attire, which was often a hoodie and leggings. My clothing was comparable to, if not more presentable than that of my coworkers, who never received a dress code violation.

19. I believe that these write-ups for dress code violations were an attempt by Reed to further sexualize me, as it related to my personal figure and not my clothing choices.

20. In combination, I viewed these repeated remarks and disproportionate discipline as an attempt by Reed to isolate me and target me with sexually discriminatory conduct.

21. These sexually discriminatory comments and actions against me altered the terms and conditions of my employment and created an abusive working environment.

22. Similarly situated employees did not receive discipline for comparable behavior or readily apparent violations of Respondent's policies.

23. For instance, one of my male coworkers named Tyrese ("Tyrese," last name unknown) failed his drug test, was routinely late, slept on the job, smelled of marijuana, and had disheveled clothing that violated Respondent's dress code. This coworker was never written up and received no disciplinary action from Respondent.

24. On or about February 17, 2023, Reed informed me that my schedule was changing and that I would be starting my shift at 8:30 A.M. instead of 8:00 A.M. from now on.

25. On or about March 31, Reed went to Human Resources and changed my starting time back to 8:00 A.M. without informing me.

26. On April 3, when I next reported for my shift, I arrived at 8:30 A.M. as previously instructed. I received a write-up from Reed for showing up late to work, even though he had changed my scheduled start time back to 8:00 A.M. without informing me.

Initials _C.J_ Date _2-25-2023_

CIARA JACKSON V. JACKSON PARK HOSPITAL
PAGE 14 OF CHARGE

27. In the afternoon on April 6, Reed once again wrote me up for a dress code violation, and he sent me home from work following the write-up.

28. On April 7, I went to our Human Resources Representative Eboni ("Eboni," last name unknown) and made a complaint about this schedule change, the repeated and targeted discipline I had been subjected to, and the sexual discrimination that Reed was perpetrating against me. I told her that the dress code write-ups made me feel sexualized, but I refrained from discussing further instances of harassment because Reed had entered the room.

29. On April 10, I again contacted Human Resources and met with Eboni. I informed her that Reed was interfering with my ability to complete my job responsibilities and subjecting me to a sexually hostile work environment.

30. Respondent's Human Resources department took no further action to follow up on any of my complaints.

31. On April 14, Respondent's network shut down, and I had trouble fixing the issue. I contacted a coworker who had the ability to assist me and address this network problem, but they did not respond. Reed never told me anything about how to address this issue.

32. Tech support informed me that this was an ongoing issue and Reed admitted that the continuing network shutdown was not my fault. However, Reed still wrote me up for not fixing the network issue.

33. On April 17, I was called in to Respondent's Human Resources office. Reed, two Human Resources staff members, and multiple security guards were present. I was

Initials __CJ__    Date __7-25-2023__

CIARA JACKSON V. JACKSON PARK HOSPITAL
PAGE 15 OF CHARGE

informed of my termination and forcibly escorted off the premises. No reason was

provided for my termination, and I received no prior job performance warning.

34. My complaints to Respondent's Human Resources department about sexual

discrimination and harassment qualify as a protected activity.

35. My complaints to Respondent's Human Resources department and my termination

occurred in a short enough time frame to raise an inference of retaliatory motive.

36. I believe that my termination was in retaliation for my complaints to Respondent's

Human Resources department about sexual discrimination and harassment.

37. Respondent retaliated against me by terminating me after I engaged in a protected

activity by reporting a violation of Title VII of the Civil Rights Act of 1964 and the

Illinois Human Rights Act.

38. Respondent aided and abetted discrimination by failing to properly supervise,

investigate and take appropriate remedial measures to otherwise prevent harm to me.

_____            7-25-2023
Complainant's Signature            Date

Initials _____ Date 7-25-2023

# EXHIBIT 2

**STATE OF ILLINOIS**    )
                            ) **ss**

**COUNTY OF COOK**    )                      **CHARGE NO. 2024CF0014**

## AFFIDAVIT OF SERVICE

Kalin Myers, deposes and states that s/he served a copy of the attached

**NOTICE OF OPT OUT OF THE INVESTIGATIVE AND ADMINISTRATIVE PROCESS, RIGHT TO COMMENCE AN ACTION IN CIRCUIT COURT OR OTHER APPROPRIATE COURT OF COMPETENT JURISDICTION, AND ORDER OF ADMINISTRATIVE CLOSURE** on each person named below by depositing the same on   September 25, 2023  , in the U.S. Mail Box  at 555  West Monroe  Street, Chicago,  Illinois,  properly  posted  for  FIRST  CLASS MAIL, addresses as follows:

| For Complainant | For Respondent |
|---|---|
| Dan Asonye | Marc R. Jacobs |
| Asonye and Associates | Seyfarth Shaw LLP |
| 100 N. LaSalle Street, Suite 2115 | 233 S. Wacker Drive, Suite 8000 |
| Chicago, IL 60602 | Chicago, IL 60606 |

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

_____
Kalin Myers

## PLEASE NOTE:

The above-signed person is responsible only for <u>mailing</u> these documents. Illinois Department of Human Rights' staff are not permitted to discuss the investigation findings once a Notice of Dismissal or Order of Closure has been issued.

**STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS**

**IN THE MATTER OF:**

CIARA JACKSON,

                 COMPLAINANT,

AND

JACKSON PARK HOSPITAL,

                 RESPONDENT.

CHARGE NO.    2024CF0014
EEOC NO.     21BA31035

**NOTICE OF OPT OUT OF THE INVESTIGATIVE AND ADMINISTRATIVE PROCESS,
RIGHT TO COMMENCE AN ACTION IN CIRCUIT COURT OR OTHER APPROPRIATE
COURT OF COMPETENT JURISDICTION, AND ORDER OF ADMINISTRATIVE CLOSURE**

<u>For Complainant</u>

Dan Asonye
Asonye and Associates
100 N. LaSalle Street, Suite 2115
Chicago, IL 60602

<u>For Respondent</u>

Marc R. Jacobs
Seyfarth Shaw LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606

**Date Perfected Charge Filed:** Jul 25, 2023        **Date Opt Out Request Filed:** Sep 14, 2023

YOU ARE HEREBY NOTIFIED that pursuant to Section 7A-102(C-1) of the Illinois Human Rights Act (775 ILCS 5/7A-102(C-1)), Complainant having filed a written request to opt out of the Illinois Department of Human Rights' investigation and administrative processing of the above-captioned charge, the IDHR issues this Notice of Opt Out of the Investigative and Administrative Process, and the Right of Complainant to Commence an Action in the Circuit Court or other appropriate court of competent jurisdiction within 95 days from the date of this Notice and Order, as identified below.

- Complaint filed and serve a copy of the complaint to the Department and Respondent on the same date that the complaint is filed with the circuit court or other appropriate court of competent jurisdiction.
- Complainant may not file or refile a substantially similar charge with the Department arising from the same incident of unlawful discrimination or harassment.

NOW, THEREFORE, it is further hereby ORDERED that the Department cease the investigation and administratively close the charge of civil rights violation(s).

ENTERED ON September 25, 2023

DEPARTMENT OF HUMAN RIGHTS

BY: _____

Brent A. Harzman, Director
Charge Processing Division

Notice of Opt Out. Right & Order Adm.
Closure D/P 01/01/2020
Rev. 04/2022

# EXHIBIT 3



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Chicago District Office**
230 S. Dearborn Street
Chicago, Illinois 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 10/24/2023

**To:** Ciara Jackson
c/o Dan Asonye, Esq.
Asonye and Associates
100 N. LaSalle Street, Suite 2115
Chicago, IL 60602

**Charge No: 21B-2023-01035**

EEOC Representative and email:

Sherice Galloway
Manager / State, Local & Tribal
sherice.galloway@eeoc.gov

## DISMISSAL OF CHARGE

**Charging Party has opted out of an investigation to commence suit in court.**

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On Behalf of the Commission:

Digitally Signed By:Diane Smason
10/24/2023

Diane Smason
Acting District Director

**Cc:**

JACKSON PARK HOSPITAL
c/o Marc R. Jacobs, Esq.
Seyfarth Shaw, LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606

## INFORMATION ON WHERE TO FILE SUIT

You have been notified of your right to sue in Federal District Court.  Suit is ordinarily filed in the District having jurisdiction of the county in which the employer, against whom you filed a Charge of Employment Discrimination, is located.  The telephone number listed for each District is that of the Clerk of the Court.

| U.S. DISTRICT COURT Northern District of Illinois **Eastern Division at Chicago** 219 S. Dearborn Street, Room 250 Chicago, IL 60604 (312-435-5670) | | U.S. DISTRICT COURT Central District of Illinois **Urbana Division** 218 U.S. Courthouse, 201 S. Vine Street Urbana, IL 61802 (217-373-5830) | |
|---|---|---|---|
| **Counties** | | **Counties** | |
| Cook | Kendall | Champaign | Kankakee |
| DuPage | Lake | Coles | Macon |
| Grundy | LaSalle | Douglas | Moultrie |
| Kane | Will | Edgar | Platt |
| | | Ford | Vermillion |
| | | Iroquois | |
| U.S. DISTRICT COURT Northern District of Illinois **Western Division at Rockford** 211 S. Court Street Rockford, IL 61101 (815-987-4480) | | **Peoria Division** 305 U.S. Courthouse, 100 N.E. Monroe Street Peoria, IL 61602 (309-671-7117) | |
| **Counties** | | **Counties** | |
| Boone | McHenry | Fulton | Putnam |
| Carroll | Ogle | Livingston | Stark |
| DeKalb | Stephenson | Marshall | Tazewell |
| JoDaviess | Whiteside | McLean | Woodford |
| Lee | Winnebago | Peoria | |
| U.S. DISTRICT COURT **Southern District of Illinois** | | **Rock Island Division (Temporarily Relocated)** 131 E. 4th Street, Room 250 Davenport, IA 52801 (309-793-5878) | |
| 301 W. Main Street Benton, IL 62812 (618-439-7760) | 750 Missouri Avenue E. St. Louis, IL 62201 (618-482-9371) | | |
| **Counties** | | **Counties** | |
| Alexander | Johnson | Bureau | Mercer |
| Bond | Lawrence | Henderson | Rock Island |
| Calhoun | Madison | Henry | Schuyler |
| Clark | Marion | Knox | Warren |
| Clay | Massac | McDonough | |
| Clinton | Monroe | **Springfield Division** 151 U.S. Courthouse, 600 E. Monroe Street Springfield, IL 62701 (217-4922-4028) | |
| Crawford | Perry | | |
| Cumberland | Pope | | |
| Edwards | Pulaski | | |
| Effingham | Randolph | | |
| Fayette | Richland | **Counties** | |
| Franklin | St. Clair | Adams | Macoupin |
| Gallatin | Saline | Brown | Menard |
| Hamilton | Union | Cass | Montgomery |
| Hardin | Wabash | Christian | Morgan |
| Jackson | Washington | DeWitt | Pike |
| Jasper | Wayne | Greene | Shelby |
| Jefferson | White | Logan | |
| Jersey | Williamson | | |

## FILING SUIT IN COURT OF COMPETENT JURISDICTION

PRIVATE SUIT RIGHTS

The issuance of this *Notice of Right to Sue* or *Dismissal and Notice of Rights* ends the EEOC process with respect to your Charge. You may file a lawsuit against the Respondent within 90 days from the date you receive this Notice. Therefore, you should keep a record of the date. Once the 90-day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf; your suit should be filed well in advance of the expi9ration of the 90-day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short Statement of the Facts of your case which shows that you are entitled to relief. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the Respondent has its main office.

You may contact the EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

**IF THE FIRST THREE CHARACTERS OF YOUR EEOC CHARGE NUMBER ARE "21B" AND YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE MUST BE DIRECTED TO IDHR.**

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment of the American with Disabilities Act, or, probably, the Equal Pay Act against at State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court.

A lawsuit under the Age Discrimination in Employment Act or the American with Disabilities Act or the Equal Pay Act against a political subdivision of a State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of the U.S. District Courts, please see the reverse side.

**ATTORNEY REPRESENTATION**

If you cannot afford an attorney, or have been unable to obtain an attorney to represent you, the court having jurisdiction in your case may assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well in advance of the 90-day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within the 90-day period.

**DESTRUCTION OF FILE**

If you file suit, your or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your Charge file could be destroyed as early as six months after the date of the Notice of Right to Sue

**IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.**